**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

CHARTER OAK FIRE INSURANCE
COMPANY, TRAVELERS PROPERTY
CASUALTY COMPANY OF AMERICA,

        Plaintiffs,

        v.                                    No. 1:17-CV-0010 WJ/SCY

STEPHANIE HOVLIK, as Personal
Representative of the Estate of Salvador Garcia,
ROBERT A. GARCIA, GABRIELLA P.
GARCIA, and FRANCISCO GARCIA,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**and**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court upon a Motion for Summary Judgment by Defendants, filed on June 30, 2017 **(Doc. 33),** and a Motion for Summary Judgment by Plaintiffs filed on October 25, 2017 **(Doc. 51)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiffs' motion is well taken and, therefore, is granted.

## BACKGROUND

Plaintiffs are two insurers who issued two separate policies to Don Curry Housemoving (the "Insured"). Travelers Property Casualty Company of America ("Travelers") issued a general liability policy, and Charter Oak Fire Insurance Company ("Charter Oak"), an affiliate of Travelers, issued an automobile policy. Plaintiffs filed this declaratory action pursuant to 28 U.S.C. § 2201(a) seeking to determine whether Charter Oak's liability under an insurance policy

is limited to $500,000, or whether the policy should be reformed to meet minimum statutory liability amounts in New Mexico's Motor Carrier Act. Plaintiffs further seek a declaration whether an automobile exclusion in the Travelers general liability policy is void.[1]

The Defendants are the representative and family members of Salvador Garcia, a victim of a drunk driving accident involving Randolph Curry, an employee of the insured. The insured, Don Curry Housemoving, is not a party to this case. The parties have apparently agreed that this accident is covered by the Charter Oak policy and have settled the issue of liability. They seek solely to determine the extent and amount of coverage.

## UNDISPUTED FACTS

The parties have filed cross-motions for summary judgment. The Court will combine the facts presented by the parties and where necessary, point out those parts that are contested. The parties generally do not dispute the facts but rather contest the relevancy or legal significance of those facts. The Court will omit facts that are redundant, irrelevant, unsupported, or conclusory.

On March 22, 2012, on NM 337 in Bernalillo County, New Mexico, Salvador Garcia was killed in a collision with Randolph Curry (the "Collision"). At the time, Randolph Curry was an employee of Don Curry Housemoving and was driving drunk. The parties stipulated that Randolph Curry was acting in the scope of his employment at the time of the Collision. **(Doc. 24)**.[2]

At the time of the Collision, Randolph Curry was driving his personal 2004 GMC pickup. National General Insurance Company, a GMAC company, had a policy in effect insuring the

---

[1] These are the only issues raised by the parties in the complaint for declaratory judgment or in the cross-motions for summary judgment.
[2] It is unclear from the facts and this stipulation whether Randolph Curry was involved in motor carrier operations at the time of the crash.

2004 GMC pickup. This policy provided liability coverage in the amount of $50,000.00 per person and $100,000 per accident. GMAC paid the $50,000 policy limit to Defendants.

The Defendants in this action filed a lawsuit against Randolph Curry; Cindy Dale, as Trustee of the Estate of Don C. Curry d/b/a Curry Housemoving; Terry A. Curry; Christopher J. Curry; and Freeway Liquors, Inc., in the First Judicial District Court, County of Santa Fe, State of New Mexico, Case No. D-101-CV-2015-00695, seeking to recover damages for the death of Salvador Garcia as a result of the Collision.

Plaintiffs Travelers and Charter Oak insured Don Curry Housemoving's structural moving operations, from which Don Curry Housemoving reported it was earning $135,000 per year.

Charter Oak issued a commercial automobile liability insurance policy to Don Curry Housemoving, policy number BA-4a158207-11-GRP, with effective dates of July 20, 2011 to July 20, 2012, which has a liability coverage limit of $500,000.00 (the "Charter Oak Policy")

Travelers issued a commercial general liability insurance policy to Don Curry Housemoving (hereafter, the "Insured"), policy number 660-4A856704-TIL-11, with effective dates of July 20, 2011 to July 20, 2012, which has a liability coverage limit of $1,000,000.00 (the "Travelers general liability policy").

The insurance policies issued by Travelers and Charter Oak were arranged by a broker, Maguire Agency.[3]  Maguire Agency, and Charter Oak, knew they were insuring structural moving operations.

---

[3] Defendants argue that Maguire Agency was an affiliate of Travelers.  Plaintiffs dispute this, and the Court concludes that the exhibits Defendants cite to do not support their assertion.

Charter Oak issued insurance cards to the Insured stating: "[t]he Vehicle described below is covered by a liability policy that meets New Mexico's insurance requirements." The 2004 GMC pickup was not listed.

On October 3, 1996, Insured was issued a Warrant for Transportation Services as an intrastate motor carrier of property, which remained in effect through the date of the Collision. The warrant specified "transportation of general commodities between points and places throughout the state of New Mexico." The commodity description in the warrant provided: "transportation of undismantled houses, buildings and structures of every kind and character, from points and places in the state of New Mexico to points and places in the state of New Mexico." The warrant was subject to revocation in 2014.

Insured was never categorized by the New Mexico Public Regulation Commission as a motor carrier of household goods and was never issued a certificate to that effect.

The Travelers general liability policy contains an exclusion for bodily injuries arising out of the use of an "auto." Auto means "a land motor vehicle, trailer or semitrailer designed for travel on public roads." The exclusion provides as follows:

2. Exclusions

This insurance does not apply to:
….
g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

The amount of liability coverage provided by the Charter Oak Policy, $500,000.00, was the amount requested by the Insured. After receiving a quote for an auto policy with liability limits of $750,000.00, the Insured requested that the automobile liability limit be lowered to $500,000.00. Plaintiffs assert in argument that Charter Oak initially offered a $750,000 policy, but there is no evidence supporting that assertion. Instead, there is evidence that Bituminous Insurance Company ("Bituminous") offered a $750,000 policy.

Insured did not request that Charter Oak or Travelers make a filing with the New Mexico Public Regulation Commission, or any other regulatory agency, in connection with its request for insurance. In its application, the Insured was asked whether any filings were necessary to comply with state or federal regulatory requirements. Specifically, the applications asked "ARE ICC, PUC or OTHER FILINGS REQUIRED?" The Insured answered "no." It appears to be undisputed that Charter Oak did not file a Uniform Form E, which certifies to New Mexico that the policy met the requirements of the motor carrier statute and associated regulations.

Don Curry Housemoving was insured by Bituminous in two separate policies, one from September 14, 2010 to September 13, 2011, and one from February 1, 2011 to February 1, 2012, for $750,000. Bituminous filed a certificate of liability insurance (Uniform Form E) with the New Mexico Public Regulation Commission. This certificate of liability insurance was on file with the Public Regulation Commission at all relevant times. A cancellation form was not filed with the Public Regulation commission until March 6, 2017.

Because of these filings by Bituminous, Plaintiffs assert that at the time the application was submitted by the Insured to Charter Oak, the Insured was in full compliance with the New Mexico financial responsibility requirements. Defendants assert there is no evidence that

Charter Oak knew about these filings or relied on them. While Bituminous' certificate of liability insurance was on record as described, the Court does not rule on any legal implications thereto.

Defendants asserted for the first time in a reply that Charter Oak did not advise the Insured that the limits were deficient. Defendants also later asserted this in a response to Plaintiffs' motion, but did not set this out as a separate additional fact that could be rebutted or disputed.[4] Therefore, the Court will not consider this fact.[5]

Charter Oak has paid to Defendants the $500,000 liability limit in the Charter Oak Policy, and the parties agreed to proceed with this declaratory judgment action to resolve remaining disputes regarding the extent of insurance coverage.

## LEGAL STANDARD

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where there is an absence of evidence to support the nonmoving party's case, summary judgment is appropriate. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A genuine issue of fact is one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Importantly, summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a

---

[4] Defendants asserted this fact to dispute Plaintiffs' facts 6 and 7. However, this is really a new factual assertion, and does not tend to dispute Plaintiffs' facts.

[5] Additionally, Defendants support this fact by citing to previous assertions of fact in their own motion for summary judgment, which do not establish this fact. There is no evidence on the record to support this assertion.

jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249 (internal citations omitted).

## DISCUSSION

**I.      Reformation of the Charter Oaks Policy**.

Defendants argue that the Charter Oak policy should be reformed to increase the policy limit to the statutory amount motor carriers are required to carry under the New Mexico Motor Carrier Act and associated regulations.  Plaintiffs argue that the Charter Oak policy should not be reformed, as the Motor Carrier Act places the duty on motor carriers, and not insurers, to comply.

a.      Statutory and regulatory language.

The policy of the New Mexico Motor Carrier Act, NMSA § 65-2A-2 *et seq*., is:

> …to foster the development, coordination and preservation of a safe, sound and adequate motor carrier system, **requiring financial responsibility and accountability on the part of motor carriers**, providing for economic regulation of motor carriers of persons and household goods and towing services performing nonconsensual tows and by streamlining and promoting uniformity of state regulation of motor carriers.

NMSA 1978, § 65-2A-2 (2011) (emphasis added).

The Financial Responsibility section of New Mexico's Motor Carrier Act in effect at the relevant time provided:

> A. The commission shall prescribe minimum requirements for financial responsibility for all motor carriers, including incidental carriers pursuant to this section…
>
> B. **A motor carrier or incidental carrier shall not operate on the highways of this state without having filed with the commission proof of financial responsibility in the form and amount as the commission shall by rule prescribe.**
> …

N.M. Stat. Ann. § 65-2A-18 (2011) (emphasis added).

The New Mexico Public Regulation Commission prescribed the following regulations (as of 2011) to effectuate the New Mexico Motor Carrier Act:

**18.3.3.8 PROOF OF FINANCIAL RESPONSIBILITY:** Every motor carrier must file proof of financial responsibility with the commission.
…
**A. Intrastate motor carriers.**
    **(1) Public liability financial responsibility.** The commission will accept the following documents as proof of the required public liability financial responsibility:
        **(a)** a certificate showing the issuance of an insurance policy with the required uniform endorsement by a company authorized to transact insurance business in New Mexico on uniform filing form E[6] for public liability insurance; or…

**18.3.3.10 MINIMUM LIMITS OF PUBLIC LIABILITY INSURANCE:**
...
    **D.** Household goods carriers must maintain a combined single-limit public liability insurance policy of at least one million five hundred thousand dollars ($1,500,000) per occurrence for bodily injury to or death of all persons injured or killed and property damage.
    **E.** Towing services, repossession services, and *motor carriers of property must maintain a combined single-limit public liability insurance policy of at least seven hundred and fifty thousand dollars ($750,000)* per occurrence for bodily injury to or death of all persons injured or killed and property damage.
 …

**18.3.3.14 AUTOMATIC SUSPENSION OF OPERATING AUTHORITY:** The commission shall, in accordance with 18.3.2.30 NMAC, suspend the operating authority of a motor carrier if it fails to continuously maintain the amounts of financial responsibility required by this rule.
NMAC 18.3.3 (2011) (emphasis added).

Initially, the Court notes that the relevant statutory language places the burden of compliance on the motor carrier or insured. NMSA § 65-2A-18(B) (2011) ("A motor carrier or

---

[6] Uniform Form E, used in all states, provides:

This is to certify that [insurer] has issued to [Motor Carrier] a policy or policies of insurance effective from _____ standard time at the address of the insured stated in said policy or policies and continuing until canceled as provided herein, which, by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provision of the motor carrier law of the state in which the Commission has jurisdiction or regulations promulgated in accordance therewith.

incidental carrier shall not operate on the highways of this state without having filed with the commission proof of financial responsibility in the form and amount as the commission shall by rule prescribe."); NMAC 18.3.3.8 (2011) ("Every motor carrier must file proof of financial responsibility with the commission."); NMAC 18.3.3.10 ("motor carriers of property must maintain a combined single-limit public liability insurance policy of at least…").  In addition, the regulatory system suspends motor carriers who do not file proof of compliance with financial responsibility laws.  NMAC 18.3.3.14.    This interpretation accords with the interpretation of similar statutory language in motor carrier statutes in other jurisdictions, which acknowledge that such statutes place the burden of compliance on motor carriers.  *Howard v. Quality Xpress, Inc.*, 989 P.2d 896, 899 (N.M. Ct. App. 1999) (interpreting the federal motor carrier act).

       b.   <u>Reformation of policies to meet Motor Carrier Act requirements</u>.

The parties did not assert, and the Court could not find, New Mexico case precedent requiring reformation of insurance policies to meet statutory minimums in all circumstances. Rather, courts tend to reform policies where the burden of compliance with the statute is placed on insurers.  For example, courts have reformed policies where the statute expressly places the burden on the insurer to offer or provide certain insurance coverage.  *See North Carolina Farm Bureau Mut. Ins. Co. v. Armwood*, 638 S.E.2d 922, 926–27, *rev'd and adopting dissent*, 653 S.E.2d 392 (N.C. 2007) (reformation of policy not appropriate where statute, by its plain language, placed burden on owners to maintain required insurance); *see also Howard v. Quality Xpress, Inc.*, 989 P.2d 896, 899 (N.M. Ct. App. 1999) (noting that federal motor carrier statute places burden of compliance on motor carrier, and declining to decide whether the federal motor carrier act necessarily becomes part of the applicable insurance policy).  Several such cases cited by the Defendants are uninsured motorist statutes, which have their own statutory language and

analysis, and are not applicable here.  *See Clark v. State Farm Mut. Auto Ins. Co.*, 433 F.3d 703, 710 (10th Cir. 2005) (policy reformed to include uninsured motorist coverage where insurer failed to offer it as required by statute); *Jordan v. Allstate Insurance Co.*, 245 P.3d 1214 (N.M. 2010) (policy reformed where uninsured motorist statute expressly required insurer to offer uninsured motorist coverage and insurer failed to offer it); *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209, 1214 (N.M. 2010) (same).

Courts also have reformed policies when statutes mandate that policies only be issued with a certain minimum level of coverage.  *See, e.g., Bovain v. Canal Insurance*, 678 S.E.2d 422 (S.C. 2009) (reformation appropriate where regulation stated that "Insurance policies… will have limits of liability not less than...").  In *Bovain,* the court reasoned that the relevant statute creates a duty for insurers to issue policies in accordance with the mandated minimum level of coverage.  *Id.* at 429.

However, where the statute places the burden of meeting statutory minimum coverage requirements on the motor carrier, courts generally do not reform such policies to meet the statutory minimum amount.  *See N. Carolina Farm Bureau Mut. Ins. Co. v. Armwood*, 413, 638 S.E.2d 922, 926, *rev'd and adopting dissent*, 361 N.C. 576, 653 S.E.2d 392 (2007) ("our Supreme Court has only reformed policies in cases where an insurer failed to comply with a requirement of the 1953 Act that places a direct burden on the insurer and policy, not the owner."); *Tri-State Pipe & Equip., Inc. v. S. Cty. Mut. Ins. Co.*, 8 S.W.3d 394, 400 (Tex. App. 1999) ("We also note that the [motor carrier statute] seems to place the burden of securing the minimum amount of insurance on the motor carrier when it provides that every "motor carrier ... *shall maintain* " the required insurance."); *Brewer v. Maynard*, 2007 WL 2119250, at *3 (S.D.W.V. 2007) (policy not reformed because federal motor carrier act places burden of

compliance on insured). Reforming policies under these circumstances would shift the burden of compliance to the insurers, where there is no relevant statutory or New Mexico Supreme Court authority to do so. *See N. Carolina Farm Bureau v. Armwood,* 638 S.2.2d 922, 923 (dissent, later adopted by the North Carolina Supreme Court, concluded that burden of compliance was on insured where statute stated "[a]n owner of a commercial motor vehicle… shall have financial responsibility for the operation of the motor vehicle in an amount equal to …"); *Carolina Cas. Ins. Co. v. Estate of Zinsmaster*, 2007 WL 670937, at *5 n.1 (N.D. Ind. 2007) ("The [Federal] Motor Carrier Act is not an insurance statute, and it is not Carolina Casualty's duty to make sure that the companies it insures comply with its provisions.")

Courts interpreting similar language in the Federal Motor Carrier Act have noted it places the responsibility of obtaining minimum levels of insurance on the motor carrier. *See Illinois Central Railroad Co. v. Dupont*, 326 F.3d 665 (5th Cir. 2003) (declining to read into motor carrier policy the statutory minimum levels of insurance); *Howard v. Quality Xpress, Inc.*, 989 P.2d 896, 899 (N.M. Ct. App. 1999) ("[T]he [Federal] regulatory scheme appears to place the burden of compliance with the compulsory insurance coverage requirements upon the motor carrier, not the insurer."); *Canal Ins. Co. v. Barker*, 2007 WL 3551508, at *5 (E.D. Va. 2007) 49 C.F.R. § 387.1 ("This subpart prescribes the minimum levels of financial responsibility required to be maintained by motor carriers of property operating motor vehicles in interstate, foreign, or intrastate commerce."); 49 C.F.R. § 387.7 ("No motor carrier shall operate a motor vehicle until the motor carrier has obtained and has in effect the minimum levels of financial responsibility as set forth in § 387.9 of this subpart."). Thus, courts that have considered this issue have refused to write into interstate motor carrier policies federal statutory minimums. *Waters v. Miller*, 560 F. Supp. 2d 1318, 1322 (M.D. Ga. 2008), *aff'd*, 564 F.3d 1355 (11th Cir. 2009) (citing *Howard*);

*Grange Mut. Cas. Co. v. Pinson Trucking Co.*, 2013 WL 443619, at *5 (M.D. Ga. 2013) *(*quoting *Dupont*)*; see also Howard*, 989 P.2d at 899 (declining to decide whether insurance statutes are necessarily written into policies).

The language of the New Mexico Motor Carrier Act neither places the burden on the insurer to offer or provide policies at certain amount, nor mandates that policies only be issued at or above a certain amount. Rather, it places the burden on the motor carrier to have insurance that meets the minimum statutory requirements. If a motor carrier fails to file proof of complying insurance, its authority to operate is revoked. As noted above, this interpretation accords with other jurisdictions' interpretation of similar language.[7]

     c.    <u>Plaintiffs did not know that insured needed insurance that complied with the New Mexico Motor Carrier Act</u>.

Defendants argue that the Charter Oak policy should be reformed, because the Plaintiffs knew or should have known that the Insured needed insurance that complied with New Mexico's Motor Carrier Act. *See Sapp v. Canal Insurance Co*., 706 S.E.2d 644, 648 (Ga. 2011)[8] (court reformed the motor carrier policy to meet statutory minimums, concluding that the insurer knew or should have known that the insured needed motor carrier insurance that complied with Georgia law).

Here, the Insured stated on its application that no insurance filings were necessary. This meant that Charter Oak did not know it needed to file Uniform Form E with the Public Regulation Commission certifying (and endorsing) that the insurance policy met minimum

---

[7] Since the Court concludes that Plaintiffs did not have a duty to issue a policy that met New Mexico's statutory minimum for motor carriers, the Court declines to address Plaintiffs' alternative arguments. Specifically, the Court declines to address the argument that there is no public policy reason to reform Charter Oak's policy, on the grounds that Bituminous' insurance filing satisfied the motor carrier financial responsibility scheme. Neither party has adequately briefed or addressed this issue.

[8] In *Sapp*, the Georgia statute in effect at the time provided that "the failure to file any form required by the state revenue commissioner shall not diminish the rights of any person to pursue an action directly against a motor common or motor contract carrier's insurer.") OCGA 46-7-12.1(a) (2007). New Mexico has no analogous provision.

statutory requirements. *See Howard*, 989 P.2d at 899 ("Quality chose to answer "no" and leave blank the questions regarding interstate travel and filings required.") "The answers to these questions were material to [insurer's] issuance of the policy because they directly affected the steps necessary for [insurer] to meet [] regulatory requirements on behalf of [insured] and may have affected the premium charged." *Howard*, 989 P.2d at 899.

Under these facts, the Court declines to hold that the Plaintiffs knew or should have known that the Insured was seeking motor carrier insurance that met the minimum statutory guidelines. The Insured answer "no" as to whether any insurance filings were required. Thus, the insurer was not asked to file a Uniform Form E certifying that the plan met the requirements of New Mexico's motor carrier act. Moreover, the insured rejected a conforming offer of insurance, and opted for a lower amount of $500,000. Had Charter Oak known it would be required to certify that the policy met higher statutory standards, it would likely have only offered the $750,000 policy, and required the Insured to pay a higher premium. There is no evidence that the insurer did file a Form E.[9]

Moreover, terms which the motor carrier did not bargain for should generally not be incorporated into a motor carrier policy. *See Illinois Central Railroad Co. v. Dupont*, 326 F.3d 665 (5th Cir. 2003). If they were, "[m]otor carriers would then have an incentive not to comply with the regulations and obtain the endorsement and pay the additional premiums associated with it, knowing that the courts would deem the endorsement part of the policy whether or not it was requested by the carrier." *Id.* at 667*, quoted in Grange Mut. Cas. Co. v. Pinson Trucking Co.*, 2013 WL 443619, at *5 (M.D. Ga. Feb. 5, 2013). Here, the insured was offered a policy which complied with the minimum statutory requirements. The insured apparently rejected the offer

---

[9] In fact, Defendants' exhibit 1, doc. 53-1, would indicate there was no such form filed, and Defendant's exhibit 2, doc. 53-2, indicates that the only active insurance on file was from Bituminous.

and asked for a policy with a lower liability limit, apparently to pay lower premiums. The remedy in this situation is not to shift burden of compliance to insurers when neither the New Mexico statutes nor case law does so, but instead to revoke the insured's authorization to operate as set forth in the regulations. *See, e.g., Brewer v. Maynard*, 2007 WL 2119250, at *3 (S.D.W.V. 2007) (insurer had no duty to make sure insured complied with federal motor carrier act where insured indicated no insurance filings were necessary and motor carrier regulations place burden of compliance on insured, not insurer), *citing Tri-State Pipe & Equip., Inc. v. S. Cty. Mut. Ins. Co.*, 8 S.W.3d 394, 400 (Tex. App. 1999) (amount of insurance that insured purchases is within control of insured; statute places burden of securing minimum amount of insurance on motor carrier).

       d.    <u>Defendants' remaining arguments</u>.

Defendants' arguments to the contrary are unavailing. Initially, the Court notes that Defendants cite to cases where the relevant statutes *do* place the burden of compliance on the insurer or require the issuance of policies with certain minimum liability. For example, in *Bovain v. Canal Insurance*, 383 S.C. 100, 678 S.E.2d 422 (S.C. 2009), the court reformed the policy where the regulatory language shifted the burden of compliance to the insurer. *See* S.C. Code. Ann. Regs. 38-414 (Supp. 2008) ("Insurance policies… for bodily injury and property damage will have limits of liability not less than…"). This language clearly prohibited the issuance of policies for motor carriers less than a certain amount, and imposed a duty on insurers to meet that statutory regulation. There is no analogous provisions in the New Mexico statutes or regulations that shift the burden to insurers to comply with the statute.

Similarly, the New Mexico Uninsured Motorist Statute, NMSA § 66-5-301, requires insurers to offer certain coverage, obtain a written objection from the insured, and incorporate

that rejection into the policy. *Jordan v. Allstate*, 245 P.3d 1214 (N.M. 2010). The statutory language provides that "[n]o motor vehicle or automobile liability policy insuring against loss… shall be delivered or issued for delivery in New Mexico, unless coverage is provided therein or supplemental thereto in minimum limits…" NMSA § 66-5-301. There is no corresponding language in New Mexico's motor carrier statute prohibiting the issuance of insurance policies without meeting the statutory minimum.

## II.     Insured was a Motor Carrier of Property.

Defendants argue that the insured was a motor carrier of household goods, which is subject to a higher statutory minimum liability of $1.5 million. NMAC 18.3.3.10 (2011) ("Household goods carriers must maintain a combined single-limit public liability insurance policy of at least one million five hundred thousand dollars…"). The Court concludes that, even if the Court had reformed the Charter Oak policy, it would have reformed the policy to meet the applicable $750,000 liability amount for motor carriers of property, and not the $1.5 million amount for motor carriers of household goods.

Initially, the Court notes that the New Mexico Public Regulation Commission is charged with determining the appropriate operating authority based on the services provided by the motor carrier. NMAC 18.3.2.8. Here, the commission determined that the Insured was a motor carrier of property. It issued a warrant allowing the Insured to operate, which described the operations as "transportation of undismantled houses, buildings and structures of every kind and character…" **(Doc. 51-1, Ex. 1).** There is no reference in the warrant to household goods.

Defendants argue that this classification is irrelevant, as the Insured was really a motor carrier of household goods and should be subject to the higher insurance requirements thereto. Even if this classification were irrelevant, the Court concludes that the insured was actually a

motor carrier of property, and not household goods. The statutory definition of "household goods" provides:

> X. "household goods" **means personal effects and property used or to be used in a dwelling** when a part of the equipment or supply of the dwelling and other similar property as the federal motor carrier safety administration may provide by regulation…
> Y. "household goods service" means the intrastate transportation, packing and storage of household goods for hire;

N.M. Stat. Ann. § 65-2A-3 (emphasis added). Here, the insured is a structural mover of prefabricated structures, portable classrooms, and other buildings. "Structures," including pre-fabricated classrooms and mobile homes, does not fall within the statutory definition of household goods. The insured moved dwellings, not the "personal effects or property to be used in a dwelling." *Id.* Defendants speculate that a structure, when moved, includes household goods. There is no evidence to that effect.

## III. Auto Exclusion in the Travelers' General Liability Policy is Not Void as against Public Policy.

Defendants argue that the auto exclusion in the Travelers general liability policy should be void as matter of public policy.[10] Specifically, Defendants argue that it is public policy that innocent victims receive compensation sufficient to meet minimum statutory amounts in the motor carrier act. Defendants seek to have the auto exclusion declared void, so that they may recover up to the statutory amount.

"[W]hen an insurance provision conflicts with the public policy expressed in a statute, it is void." *Estep v. State Farm Mut. Auto. Ins. Co.* 703 P.2d 882, 885 (N.M. 1985). "Exclusionary provisions in an insurance policy will be enforced if they (1) are clear and unambiguous in meaning, and, (2) if they do not conflict with public policy stated in express statutory language

---

[10] Plaintiffs separately argue that the auto exclusion in the Travelers policy should not be void on that basis that it is repugnant to the insuring clause. *Marshall v. Providence Washington Ins. Co.*, 951 P.2d 76, 79 (N.M. Ct. App. 1997). Defendants do not appear to contest this argument and the Court otherwise finds it well-taken.

or by indication of legislative intent." *Jimenez v. Found. Reserve Ins. Co.*, 757 P.2d 792, 794 (N.M. 1988); *New Mexico Physicians Mut. Liab. Co. v. LaMure*, 860 P.2d 734, 737 (N.M. 1993). "In evaluating whether an exclusionary provision conflicts with a particular statute and is therefore void, our inquiry focuses on the legislative intent behind the statute." *LaMure*, 860 P.2d at 737.

Automobile exclusions in general liability policies exist to exclude coverage of risks normally covered by automobile insurance. *See Strickland v. Auto-Owners Ins. Co.*, 273 Ga. App. 662, 663, 615 S.E.2d 808, 810 (2005) (to prevent duplicative premiums and overlapping coverage, general liability policies often contain exclusions to make it clear that it does not cover motor vehicle collisions). Liability for operation of a motor vehicle is usually not within the risk which general liability policies are designed to cover. *See, e.g., Farm Bureau Mut. Ins. Co. of Michigan v. Stark*, 437 Mich. 175, 185, 468 N.W.2d 498, 503 (1991), *overruled on other grounds*, 597 N.W.2d 28 (1999) ("The risk of liability from the use of a motor vehicle is traditionally and properly covered by motor vehicle policies, not by homeowner's insurance."). The Travelers general liability policy was issued alongside the Charter Oak Policy, which provided auto coverage.

As explained above, the Court concludes that it would not further public policy to void the auto exclusion in the Travelers general liability policy, because the motor carrier act does not mandate that insurance policies only be issued with certain coverage, or place the burden on insurers to issue coverage that meets statutory requirements.

Furthermore, it is not appropriate to convert a general commercial liability policy into an automobile policy, and Defendants have not provided relevant case law to support such a drastic step. Defendants instead cite to cases where courts void exclusions in *automobile* policies

because they restrict coverage required by mandatory automobile insurance statutes. In fact, cases from other jurisdictions refuse to void an auto exclusion in a general liability policy. *Nautilus Ins. Co. v. Nicky & Claire's Day Care, Inc.*, 630 F. Supp. 2d 727, 735 (W.D. Tex. 2009) (auto exclusion in general liability policy not void as a matter of public policy, noting that insured could procure an automobile policy); *Tri-State Pipe & Equip., Inc. v. S. Cty. Mut. Ins. Co.*, 8 S.W.3d 394, 400 (Tex. App. 1999); *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co*., 148 P.3d 832, 839, *as corrected* (Ok. 2006) (refusing to convert a general liability policy to an automobile policy).

Moreover, the Travelers general liability policy was not issued to satisfy the requirements of the motor carrier act. The motor carrier act is designed to regulate transportation activities and operations on the highways of the state. NMSA § 65-2A-2. The only insurance policy required to be certified to Public Regulation Commission is an automobile policy, not a general liability policy. *See* NMAC 18.3.3.8 (commission will accept proof of financial responsibility by filing of Uniform Form E.).[11] Therefore, the auto exclusion in the Travelers general liability policy does not conflict with either statutory language or legislative intent.

Because of this ruling, the Court does not address Plaintiffs' arguments that the financial responsibility requirements in the motor carrier act were satisfied by Bituminous' insurance filing. Moreover, the Court will not address Plaintiffs' arguments that (1) public policy is not implicated because Randolph Curry was driving his personal 2004 GMC pickup and was not

---

[11] The parties cite to Uniform Form E, which in part reads: "…which, by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has ... been amended to **provide automobile bodily injury and property damage liability insurance** covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law." (emphasis added).

involved in motor carrier operations during the Collision,[12] or (2) that public policy was satisfied by the $50,000 GMAC policy.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiffs' motion is well taken. The Court concludes that the limit of liability insurance in the Charter Oak Policy is $500,000.00 and Charter Oak has no additional obligations under the policy. Furthermore, the Court finds and concludes that the auto exclusion in the Travelers general liability policy is not void on public policy grounds. A final judgment shall issue separately.

**THEREFORE,**

**IT IS ORDERED** with respect to Plaintiffs' Motion for Summary Judgment (**Doc. 51**) that:

- **Summary Judgment is GRANTED** as to Charter Oak's request for a declaration that the limit of liability insurance in the Charter Oak Policy is $500,000 and Charter Oak has no additional obligations under the policy or New Mexico law; and

- **Summary Judgment is GRANTED** as to Travelers' request for a declaration that the auto exclusion in the Travelers general liability policy is not void.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (**Doc. 33**) is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

---

[12] Plaintiffs have also not asserted as an undisputed fact that Randolph Curry was involved in motor carrier operations during the Collision.